[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 288.]

THE STATE EX REL. GARON, APPELLANT, *v*. UNIVERSITY HOSPITALS OF
CLEVELAND ET AL., APPELLEES.

[Cite as *State ex rel. Garon v. Univ. Hosp. of Cleveland*, 2000-Ohio-329.]

*Workers' compensation—Court of appeals' denial of writ of mandamus requiring Industrial Commission to vacate its order denying relator's election to receive impaired earning capacity compensation pursuant to former R.C. 4123.57(A) affirmed.*

(No. 98-2112—Submitted February 22, 2000—Decided April 5, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD07-904.

_____

{¶ 1} Janina Garon, appellant, sought a writ of mandamus requiring appellee Industrial Commission of Ohio to vacate its order denying her election to receive impaired earning capacity ("IEC") compensation pursuant to former R.C. 4123.57(A) and to enter an order granting this compensation. The Court of Appeals for Franklin County denied the writ, finding evidence to support the commission's conclusion that Garon had no desire to work during any possible IEC period and, therefore, that she had failed to prove the necessary causal connection between her injury and decreased earnings. Garon appeals as of right.

{¶ 2} Garon injured her shoulder in 1979 while working as an operating room technician for appellee University Hospitals of Cleveland, Inc. ("University Hospitals"), a self-insured employer in the workers' compensation system. In 1980, she was assessed as having a twenty percent permanent partial disability ("PPD") and elected to be paid for this disability pursuant to former R.C. 4123.57(B). Over the succeeding years, Garon continued to apply for increased PPD compensation, and by October 1992, her PPD had been increased to forty

percent. Garon was apparently paid this compensation in accordance with R.C. 4123.57(B).

{¶ 3} In 1993, the commission granted Garon's request to reactivate her claim and also allowed as compensable another condition. On March 11, 1996, Garon applied to change her PPD election so that she could be compensated for IEC under former R.C. 4123.57(A). In support, Garon submitted her affidavit, as amended, along with various medical and other reports. Garon attested that (1) she took early retirement in 1989[1] from University Hospitals[2]; (2) she later found lighter duty work as a receptionist at University Suburban Health Center, where she worked part-time from July 1990 until she was fired on December 4, 1992[3]; and (3) she got a job at another hospital, but she lasted only one day and never worked again.

{¶ 4} The commission found that the additional allowance constituted the necessary "changed circumstances" that permitted a change of election; however, the commission denied IEC compensation. In addition to finding that Garon's IEC may have been attributable to medical problems other than her allowed conditions, the commission determined that Garon's decreased earnings were not the result of her injury. The commission explained:

"There is insufficient evidence that claimant attempted to work subsequent to her firing from Suburban Health Center in January [*sic,* December] 1992. Consideration of post-injury earning capacity assumes, at a minimum, a desire to earn during the period in which the impairment has been alleged. Claimant has

1. Garon's original affidavit indicated that she retired in 1989; an amendment indicated that she retired in 1990. The commission apparently credited the first representation.

2. Although Garon attested that her shoulder injury prevented her job performance, she did not take disability retirement.
3. For some reason, the commission and court of appeals found that Garon worked at University Suburban Health Center only until January 1992; however, the court's magistrate correctly observed that December 4, 1992 was Garon's last day.

offered no evidence of her desire or attempts to work subsequent to her firing * * * except for a one (1) day attempt to work at Mt. Sinai as an operating room nurse which claimant states in her affidavit she was unable to do.

"* * *

"Based on claimant's ability to work from 1989 to January [*sic*, December] of 1992 as a nurse['s] receptionis[t], this in fact establishes claimant's ability to work. It was not any [medical] restriction * * * placed on claimant relating to this injury [that] restricted claimant to part-time work during this period. [Furthermore,] [c]laimant has not worked since her firing at Suburban in January of 1992 [*sic*, December] at age 57."

{¶ 5} The court of appeals' magistrate agreed that Garon had not proved her desire to work. He further found that Garon, who had not specifically identified the period for which she claimed IEC, was limited by R.C. 4123.52 to a date two years before her application was filed, or as of March 11, 1994. In objections, Garon complained that R.C. 4123.52 did not apply to former R.C. 4123.57(A) and that she had established her IEC just by showing a debilitating industrial injury and subsequent decreased earnings. The court of appeals rejected both arguments, prompting this appeal.

———————

*Ticktin, Baron, Koepper & Co., L.P.A.,* and *Harold Ticktin*, for appellant.

*Rademaker, Matty, McClelland & Greve, Lynn G. Murphy* and *Robert C. McClelland*, for appellee University Hospitals.

*Betty D. Montgomery*, Attorney General, and *Michael A. Vanderhorst*, Assistant Attorney General, for appellee Industrial Commission.

———————

***Per Curiam.***

**{¶ 6}** Garon argues that she has shown IEC and that R.C. 4123.52 does not apply to limit her entitlement to IEC compensation. We do not reach the second issue because Garon has failed to establish her right to be paid IEC compensation at any time after she left University Hospitals. Accordingly, we affirm the court of appeals' judgment on this basis.

**{¶ 7}** Garon essentially argues that her unrebutted evidence of injury-induced impairment and a decrease in her post-injury earnings required the commission to grant IEC compensation. But unlike the PPD available under former R.C. 4123.57(B), "there is no automatic entitlement to IEC benefits once a permanent partial disability has been proven." *State ex rel. Kirschner v. Indus. Comm.* (1998), 82 Ohio St.3d 90, 91, 694 N.E.2d 460, 462. Rather, a claimant hoping to qualify for compensation under former R.C. 4123.57(A), in addition to proving pre- and post-injury earning capacity, must prove *actual* IEC. *State ex rel. CPC Group, Gen. Motors Corp. v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 210, 559 N.E.2d 1330, 1331. This showing demands evidence that the claimant's decreased earnings are directly attributable to the injury and not to any lack of interest or industriousness or, for that matter, other nonallowed conditions. Thus, the claimant must persuade the commission, in effect, that he or she wants to work and that only the injury-induced impairment stands in the way. *State ex rel. Shotts v. Austin Powder Co.* (1999), 84 Ohio St.3d 429, 431, 704 N.E.2d 1226, 1228; *State ex rel. Loral Systems Group, Inc. v. Indus. Comm.* (1991), 59 Ohio St.3d 112, 113, 570 N.E.2d 1106, 1107; *State ex rel. Pauley v. Indus. Comm.* (1990), 53 Ohio St.3d 263, 264-265, 559 N.E.2d 1333, 1335.

**{¶ 8}** The court of appeals cogently explained why the commission had some evidence for concluding that Garon had not shown the requisite causal connection between her decreased earnings and her injury:

"[Garon] took early retirement from her job with * * * University Hospitals of Cleveland in January of 1989. [Garon] worked as a receptionist at Cleveland

Suburban Health Center until January [*sic*, December] 1992; her departure had no connection to her allowed condition. [Garon] worked one day in the same capacity she had held at University Hospital[s] at Mt. Sinai Hospital in 1994, but could not perform the job duties because of her shoulder. Since that time, [Garon] states that she has been unemployed although she has been looking for light work. [Garon] submitted a list of places she looked for work from December 1992 to December 1995 consisting of sixteen employer names comprised mostly of hospitals, clinics, and nursing homes.

"[Garon] last worked for all intents and purposes in January [*sic, December*] 1992. The extent of [Garon's] effort to find work since 1992 appears to be a list of sixteen places of employment over a three-year period. As the magistrate noted, the record does not establish that [Garon] actually contacted the potential employers on her list, nor does it include details such as dates and the name of the * * * [person contacted]. In light of these facts, the magistrate properly upheld the commission's finding that there was insufficient evidence of [Garon's] desire to work during the period for which IEC is sought."

{¶ 9} This tenuous evidence provides Garon no basis for ever attributing her decreased earnings to her injury. Garon's first opportunity to have qualified for IEC was after she retired in 1989; however, the decrease in her earnings at that time did not result from her injury. She earned less because she voluntarily retired and, although no medical restriction prevented her from working full-time with different duties, she apparently did not look for full-time work. Garon also might have established IEC eligibility in July 1990, when she accepted part-time employment; however, she provided no evidence that part-time work was medically or practically necessary. Finally, Garon might have qualified for IEC eligibility in December 1992, when she was fired. But again, nothing proves that that decrease in her earnings, from a part-time salary to zero, resulted from medical or practical necessity; it seems instead that she simply was not interested in working.

**{¶ 10}** Thus, it is of no consequence whether R.C. 4123.52 applies to limit IEC awards under R.C. 4123.57(A) or not.  Garon failed to prove any possible right to this compensation.  The commission thus properly refused her election and request for IEC compensation, and the court of appeals was justified in denying a writ of mandamus.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____